## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF OHIO
## EASTERN DIVISION

**DANTE YOUNG,**

               **Petitioner,**       **Case No. 2:21-cv-4059**
                                             **Judge Sarah D. Morrison**
**v.**                               **Magistrate Judge Elizabeth P. Deavers**

**WANZA JACKSON-MITCHELL,**
**Warden, Warren Correctional**
**Institution**

               **Respondent.**

### REPORT AND RECOMMENDATION

Petitioner Dante Young seeks a writ of habeas corpus under 28 U.S.C. §
2254. (ECF No. 1.) Petitioner seeks release from confinement imposed as part of the
judgment of a state court in a criminal action. The case has been referred to the
Undersigned pursuant to 28 U.S.C. § 636(b) and Columbus General Order 14-1
regarding assignments and references to Magistrate Judges. The Respondent
Warden has filed a Return of Writ (ECF No. 5), and Petitioner has filed a Traverse
(ECF No. 6), making the Petition ripe for decision. For the reasons set forth below,
it is recommended that the Petition be **DENIED** and this action be **DISMISSED**.

## I.    FACTUAL BACKGROUND AND PROCEDURAL HISTORY

The Tenth District Court of Appeals summarized the factual background,
*State v. Young*, 10th Dist. Franklin Nos. 18-AP-630, 18-AP-631, 2020-Ohio-462, ¶¶
2-22, and the Warden, in the Return of Writ, set forth a procedural history (ECF

No. 5, PageID 335-39) that Petitioner states "is unobjectionable." (ECF No. 6, PageID 365.) The Court incorporates those discussions by reference.

## II.    LEGAL STANDARD

As Petitioner is imprisoned based on a state court judgment, he may petition for a writ of habeas corpus "only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). A petition "shall not be granted with respect to any claim" that:

> [W]as adjudicated on the merits in State court proceedings unless the adjudication of the claim—(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented[.]

28 U.S.C. § 2254(d). A habeas corpus petitioner must also satisfy additional procedural requirements, including but not limited to exhaustion of State court judicial remedies. 28 U.S.C. § 2254(b). Pursuant to the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), Pub. L. 104-132, 110 Stat. 1214, the Court's review of a claim adjudicated on its merits in a State court proceeding is sharply circumscribed; "a determination of a factual issue made by a State court shall be presumed to be correct. The applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1).

A state court may be found to have acted "contrary to" federal law in two ways: (1) if the state court's decision is "substantially different from the relevant precedent" of the U.S. Supreme Court; or (2) if "the state court confronts a set of

2

facts that are materially indistinguishable from a decision of [the U.S. Supreme] Court and nevertheless arrives at a result different from [U.S. Supreme Court] precedent." *Williams (Terry) v. Taylor*, 529 U.S. 362, 405–406 (2000). A state court does not act contrary to federal law simply because its application of federal law was incorrect. Rather, the decision must have been "mutually opposed," *id.* at 406, to "clearly established Federal law, as determined by the Supreme Court," 28 U.S.C. § 2254(d)(1), which encompasses only the holdings of Supreme Court decisions, and not their dicta. *Williams (Terry)*, 529 U.S. at 412.

The "unreasonable application" standard is distinct from and more deferential than that of "clear error." "It is not enough that a federal habeas court, in its independent review of the legal question, is left with a firm conviction that the state court decision was erroneous. . . . Rather, that application must be objectively unreasonable." *Lockyer v. Andrade*, 538 U.S. 63, 75, 76 (2003) (internal quotation marks omitted). "[E]valuating whether a rule application was unreasonable requires considering the rule's specificity. The more general the rule, the more leeway courts have in reaching outcomes in case-by-case determinations." *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004). However, this deferential standard applies only when the state court has addressed the merits of a claim raised on appeal; "[w]here a state court has not adjudicated a claim on the merits, the issue is reviewed *de novo* by a federal court on collateral review." *Trimble v. Bobby*, 804 F.3d 767, 777 (6th Cir. 2015).

3

## III.  DISCUSSION

Petitioner raises two claims for relief. First, he argues that his murder conviction is based on insufficient evidence because the state did not prove beyond a reasonable doubt that he acted "purposely," as required by § 2903.02(A) of the Ohio code. (ECF No. 1, at PageID 5.) Second, he claims that his trial counsel failed to object to misleading jury instructions as well as several instances of prosecutorial misconduct, thus depriving Petitioner of the effective assistance of counsel. (*Id.* at PageID 7.)

### A.  Insufficient Evidence

Petitioner claims that the prosecution failed to present sufficient evidence to establish that he "possessed or shared a 'purposeful' mental state regarding Courtney Elmore's death at the hands of Davon Granger and Dante Brady," as is required for conviction under Ohio Revised Code § 2903.02(A). (ECF No. 6, at PageID 366–67.) He contends that the state appellate court ignored the testimony of state witness Chiquetta Hager that the group's plans never included immediately killing or harming Mr. Elmore during their initial encounter. (*Id.* at PageID 367 (*citing State v. Young*, No. 18AP-630, No. 18AP-631, 2020 WL 704577, at *14 (Ohio App. 10 Dist. 2020)).)

Respondent argues that "[t]he state court's determination that the evidence was sufficient to sustain Young's murder conviction was a reasonable application of the *Jackson* standard and was based on a reasonable determination of the facts in light of the record evidence." (ECF No. 5, at PageID 346 (*citing Young*, 2020 WL

4

704577, at *13–14).) Respondent contends that Petitioner's claim overlooks the other actions and circumstances from which intent may be inferred. (*Id.* at PageID 347.) Respondent asserts that a rational trier of fact could conclude that Petitioner was guilty of murder based on Hager's testimony that Petitioner actively participated in the planning stages of the crime and instructed her to dispose of evidence after the murder, Petitioner's own admission that he was present in the front seat of the van during the murder, and his knowledge that Granger and Brady were armed. (*Id.* at PageID 349 (*citing Stewart v. Wolfenbarger*, 595 F.3d 647, 653 (6th Cir. 2010), and *Tucker v. Palmer*, 541 F.3d 652, 656 (6th Cir. 2008)).)

The Ohio Court of Appeals rejected Petitioner's claim on direct appeal:

> In his second assignment of error, appellant contends the trial court erred in denying appellant's Crim.R. 29 motion for acquittal for murder under R.C. 2903.02(A) and violated his rights to due process and a fair trial when, in the absence of sufficient evidence, it convicted him on Count 1 of the indictment. For the following reasons, we disagree with appellant.
>
> Crim.R. 29(A) provides: "The court on motion of a defendant or on its own motion, after the evidence on either side is closed, shall order the entry of a judgment of acquittal of one or more offenses charged in the indictment * * * if the evidence is insufficient to sustain a conviction of such offense or offenses." "Because a Crim.R. 29 motion questions the sufficiency of the evidence, '[w]e apply the same standard of review to Crim.R. 29 motions as we use in reviewing the sufficiency of the evidence.'" *State v. Brown*, 10th Dist. No. 15AP-935, 2016-Ohio-7944, ¶ 27, quoting *State v. Hernandez*, 10th Dist. No. 09AP-125, 2009-Ohio-5128, ¶ 6; *State v. Tenace*, 109 Ohio St.3d 255, 2006-Ohio-2417, ¶ 37. Sufficiency of the evidence is a legal standard that tests whether the evidence is legally adequate to support a verdict. *State v. Kurtz*, 10th Dist. No. 17AP-382, 2018-Ohio-3942, ¶ 15, citing *State v. Thompkins*, 78 Ohio St.3d 380, 386 (1997). Whether the evidence is legally sufficient to support a verdict is a question of law, not fact. *Kurtz* at ¶ 15. "In determining whether the evidence is legally sufficient to support a conviction, '"[t]he relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt."'" *Id.*, quoting *State v. Robinson*, 124 Ohio St.3d 76, 2009-Ohio-5937, ¶ 34, quoting *State v. Jenks*, 61 Ohio St.3d 259 (1991), paragraph two of the

syllabus. "A verdict will not be disturbed unless, after viewing the evidence in a light most favorable to the prosecution, it is apparent that reasonable minds could not reach the conclusion reached by the trier of fact." *State v. Patterson*, 10th Dist. No. 15AP-1117, 2016-Ohio-7130, ¶ 32, citing *State v. Treesh*, 90 Ohio St.3d 460, 484 (2001).

"In a sufficiency of the evidence inquiry, appellate courts do not assess whether the prosecution's evidence is to be believed but whether, if believed, the evidence supports the conviction." *Kurtz* at ¶ 16, citing *State v. Yarbrough*, 95 Ohio St.3d 227, 2002-Ohio-2126, ¶ 79–80 (evaluation of witness credibility not proper on review for sufficiency of evidence); *State v. Bankston*, 10th Dist. No. 08AP-668, 2009-Ohio-754, ¶ 4 (noting that "in a sufficiency of the evidence review, an appellate court does not engage in a determination of witness credibility; rather, it essentially assumes the state's witnesses testified truthfully and determines if that testimony satisfies each element of the crime"). "Further, 'the testimony of one witness, if believed by the jury, is enough to support a conviction.'" *Patterson* at ¶ 33, quoting *State v. Strong*, 10th Dist. No. 09AP-874, 2011-Ohio-1024, ¶ 42. See also *State v. Clark*, 10th Dist. No. 15AP-926, 2016-Ohio-5493, ¶ 25.

R.C. 2903.02(A) states, in pertinent part, "[n]o person shall purposely cause the death of another." At trial, the state argued appellant was guilty of purposeful murder under R.C. 2903.02(A) under the theory of complicity. R.C. 2923.03(A) defines the offense of complicity, in relevant part, as follows:

> No person, acting with the kind of culpability required for the commission of an offense, shall do any of the following:
>
> * * *
>
> (2) Aid or abet another in committing the offense.

"[T]o support a conviction for complicity by aiding and abetting pursuant to R.C. 2923.03(A)(2), the evidence must show that the defendant supported, assisted, encouraged, cooperated with, advised, or incited the principal in the commission of the crime, and that the defendant shared the criminal intent of the principal." *State v. Johnson*, 93 Ohio St.3d 240, 245–46 (2001) "'[T]he mere presence of an accused at the scene of a crime is not sufficient to prove, in and of itself, that the accused was an aider and abettor.'" *Id*. at 243, quoting *State v. Widner*, 69 Ohio St.2d 267, 269 (1982). Aiding and abetting may be shown by both direct and circumstantial evidence, and participation may be inferred from presence, companionship, and conduct before and after the offense is committed. *Johnson* at 245.

Appellant argues the record of the case is devoid of any evidence that appellant's purpose was to kill Mr. Elmore. At best, appellant believes the state's evidence established that Mr. Elmore's killing was a purposeful act by Granger and Brady, but no evidence showed that Granger and Brady

6

formed that mental state before Mr. Elmore started to get into the van, and no evidence showed that appellant was aware of their purpose at any time or shared that purpose. To the contrary, appellant points out Ms. Hager testified "she 'didn't think they were going to kill [Mr. Elmore].'" (Appellant's Reply Brief at 6.)

Appellant further argues a question by the jury during deliberations demonstrates no evidence showed appellant had knowledge that Granger and Brady intended to kill Mr. Elmore. As previously provided, the jury question stated "[i]f the outcome of the evening of May 31st changed the original intent, if the defendant had no knowledge (but he had knowledge of original intent), can [appellant] be found [guilty of murder for] 'failing to act?'" (Tr. Vol. 3 at 600.) According to appellant, this question indicates the jurors believed the original intent was "merely to deceive Mr. Elmore into a conversation about the May 29, 2015 robbery, and possibly cause physical harm to him" and not to kill Mr. Elmore, and appellant could nonetheless be convicted of murder for "failing to act" to stop Granger and Brady. (Appellant's Brief at 15.) Appellant notes that the idea that appellant had a duty to act presumably arose from the jury instructions regarding causation, which was not tailored to the evidence and should not have been given to the jury.

The state argues, based on the evidence presented, the charge of purposeful murder on a theory of complicity is supported by sufficient evidence. Specifically, the state contends appellant's intent to kill Mr. Elmore can be inferred from circumstances surrounding the shooting and appellant's subsequent conduct. The state argues the jury question is irrelevant to the question of sufficiency but notes there is no reason to believe this view represented the ultimate view of the entire jury. Alternatively, the state argues even if there is a lack of sufficient evidence as to Count 1 (purposeful murder), this would be harmless considering appellant was convicted of the same offense on an alternative basis in Count 2 (felony murder).

In this case, it is undisputed that appellant did not fire the shot that killed Mr. Elmore, and the issue presented on appeal centers on whether appellant shared the criminal intent of the principal offenders. The criminal intent necessary to convict a defendant of murder under R.C. 2903.02(A) is "purposely." "A person acts purposely when it is the person's specific intention to cause a certain result, or when the gist of the offense is a prohibition against conduct of a certain nature, regardless of what the offender intends to accomplish thereby, it is the offender's specific intention to engage in conduct of that nature." R.C. 2901.22(A). "It is a fundamental principle that a person is presumed to intend the natural, reasonable and probable consequences of his voluntary acts." *State v. Johnson*, 56 Ohio St.2d 35, 39 (1978). "Purpose or intent can be established by circumstantial evidence * * * and by the surrounding facts and circumstances in the case." *State ex rel. Brust v. Mohr*, 10th Dist. No. 17AP-275, 2018-Ohio-1067, ¶ 12.

In this case, the state presented evidence that appellant was the victim of the violent home invasion robbery orchestrated in part by Mr. Elmore, provided all the information regarding the robbery and Mr. Elmore's involvement to the group, was present during the group's discussion of Mr. Elmore, provided one of the guns used by the shooters, rode in the van with the group to the scene of the crime, fled the scene of the crime with the group, failed to alert law enforcement of the shooting, engaged in multiple acts in an attempt to cover up the crime, hid for one week after the crime, and initially lied to law enforcement regarding being in the van when the shooting occurred.

This court has previously held the defendant's relationship with the victim, fleeing the scene of the crime with the principal offender, failing to report the crime, and assisting in attempting to cover up the crime serve as evidence the defendant shared the principal offender's purpose to kill the victim. *State v. Dortch*, 10th Dist. No. 12AP-125, 2012-Ohio-6196, ¶ 30–33, *appeal not allowed*, 125 Ohio St.3d 1434, 2013-Ohio-1857 (finding evidence that defendant fled the scene of the crime with the principal offender, discussed the shooting on his cell phone and changed clothes immediately after the shooting, and did not report the shooting to police to support conviction for murder under R.C. 2903.02(A) under a complicity theory); *State v. Hayes*, 10th Dist. No. 14AP-2, 2014-Ohio-5295, ¶ 18, *appeal not allowed*, 142 Ohio St.3d 1518, 2015-Ohio-2341 (disagreeing with defendant's argument that he was merely present when a robbery accomplice shot a victim where the defendant had cooperated with the accomplice in planning the robbery, was present when his companions pointed the gun at the victim during the course of the robbery, and the appellant fled the scene with the shooter and other accomplices); *State v. Horton*, 10th Dist. No. 03AP-665, 2005-Ohio-458, ¶ 33 (citing to evidence that defendant assisted in disposing of accomplice's clothing the day after the victim was killed in support of defendant's shared criminal intent to murder the victim).

Furthermore, given that a gun is an "inherently dangerous instrumentality, the use of which is reasonably likely to produce death," the Supreme Court and this court have found a defendant's knowledge that a gun will be used to commit a crime, or the defendant's assistance in providing a gun to commit a crime, to be evidence that the defendant shared the principal offender's intent to commit murder. *Widner*, 69 Ohio St.2d at 270 (finding a jury could reasonably infer that defendant formed the specific intention to commit murder and aided a car passenger in the commission of attempted murder where record evidence showed the defendant knew that the passenger was in possession of a gun and, after the passenger fired at a police officer, took intentional evasive actions); *State v. Hall*, 10th Dist. No. 08AP-939, 2009-Ohio-2277, ¶ 27 (finding, although the original plan was to not kill the victim, evidence that the defendant helped plan a robbery, drove the car to the scene, knew an accomplice was going to use a firearm to rob an armed man, and fled the scene with the accomplices was sufficient to support the murder conviction under a complicity theory); *State v. Mitchell*,

10th Dist. No. 10AP-756, 2011-Ohio-3818, ¶ 29 (finding the jury could reasonably infer the defendant's purpose to kill from the fact that he gave his accomplice a gun during the execution of the plan to steal from the victim and his flight from the scene and disposal of the guns after the shooting "demonstrate[d] furtive conduct reflective of a consciousness of guilt"); *State v. Horton*, 10th Dist. No. 13AP-855, 2014-Ohio-2785, ¶ 14 (evidence that the defendant retrieved a gun from his mother's house prior to travelling to the victim's house, "if believed, demonstrated that, if appellant was not the principal offender, he aided and abetted his brother in the commission of the crime"). See also *Brust*, 2018-Ohio-1067, at ¶ 12 ("The specific intent to kill may be reasonably inferred from the fact that a firearm is an inherently dangerous instrument, the use of which is likely to produce death.").

Moreover, appellant's citation to the transcript where Ms. Hager confirms they "[d]idn't think they were going to kill [Mr. Elmore]" does not render the evidence presented by the state insufficient in this case. (Tr. Vol. 2 at 374.) First, "[i]ntent cannot be proven by the direct testimony of a third person; rather, it can be inferred from the surrounding facts and circumstances of the crime." *State v. Maynard*, 10th Dist. No. 11AP-697, 2012-Ohio-2946, ¶ 28. Second, even if Hager's testimony is believed, this testimony reflects her assessment of the intent of the group at the house when she heard a discussion of abducting Mr. Elmore, bringing him back to the house, and inflicting pain on him. However, Ms. Hager admitted she did not hear the entire conversation and, in particular, did not know Brady had appellant's gun until appellant told her so after the shooting. Third, to the extent Ms. Hager's testimony can be viewed as conflicting with the circumstantial evidence presented by the state, the resolution of such conflict is within the sole province of the trier of fact and, as such, is not a question of law appropriate for resolution under a sufficiency analysis. Hall at ¶ 25.

Overall, we find the record evidence of this case, construed in the state's favor, shows appellant's involvement in Mr. Elmore's murder extended well beyond his "mere presence" during the shooting. *Johnson*, 93 Ohio St.3d at 243. After viewing the evidence in the light most favorable to the prosecution, a rational trier of fact could have found the essential elements of purposeful murder proven beyond a reasonable doubt under a complicity theory.

Finally, appellant has not explained how the question from the jury or the instruction on causation support reversal under a review of the sufficiency of the evidence where, as is the case here, appellant's conviction for murder under R.C. 2903.02(A) is supported by legally sufficient evidence under a complicity theory under R.C. 2923.03(A)(2). Therefore, we find appellant has not demonstrated reversible error regarding the sufficiency of the evidence in light of jury question and instruction on causation. *State v. Sims*, 10th Dist. No. 14AP-1025, 2016-Ohio-4763, ¶ 11 (stating general rule that an appellant bears the burden of affirmatively demonstrating error on appeal); *State v. Hubbard*, 10th Dist. No. 11AP-945, 2013-Ohio-2735, ¶ 34 ("An appellant must support their assignments of error with an argument,

9

which includes citation to legal authority."), citing App.R. 16(A)(7) and 12(A)(2); *State v. Smith*, 9th Dist. No. 15AP0001n, 2017-Ohio-359, ¶ 22 (noting that it is not the duty of an appellate court to create an argument on an appellant's behalf).

Accordingly, we overrule appellant's second assignment of error.

*State v. Young*, 2020 WL 704577, at *11–14.

The Due Process Clause of the Fourteenth Amendment "protects the accused against conviction except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged." *In re Winship*, 397 U.S. 358, 364 (1970); *Thompson v. City of Louisville*, 362 U.S. 199, 206 (1960). On a claim of insufficient evidence, the reviewing court must ask "whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319 (1979). The essential elements of the crime are those "substantive elements of the criminal offense as defined by state law." *Id.* at 324. "[The reviewing court] do[es] not reweigh the evidence, re-evaluate the credibility of witnesses, or substitute our judgment for that of the jury." *Smith v. Nagy*, 962 F.3d 192, 205 (6th Cir. 2020) (*quoting Brown v. Konteh*, 567 F.3d 191, 205 (6th Cir. 2009)).

In addition to the deference given to the trier-of-fact under *Jackson*, a federal habeas court reviewing a state court conviction under the strictures of the AEDPA, as here, also must defer to the state appellate court's sufficiency determination. *Davis v. Lafler*, 658 F.3d 525, 531 (6th Cir. 2011) (en banc) (*citing Tucker*, 541 F.3d at 656). "This means that 'even though [the court] might have not voted to convict a

10

defendant had we participated in jury deliberations, we must uphold the jury verdict if any rational trier of fact could have found the defendant guilty after resolving all disputes in favor of the prosecution.'" *Thomas v. Stephenson*, 898 F.3d 693, 698 (6th Cir. 2018) (*quoting Brown*, 567 F.3d at 205). And, "even were [the court] to conclude that a rational trier of fact could not have found a petitioner guilty beyond a reasonable doubt . . . we must still defer to the state appellate court's sufficiency determination as long as it is not unreasonable." *Id.* (*quoting Brown*, 567 F.3d at 205 (internal quotation marks omitted)).

Because the Ohio Court of Appeals rejected Petitioner's claim on the merits, the question before the Court here is whether the state court unreasonably applied the *Jackson* insufficiency standard to the facts. *See* § 2254(d)(1). The Undersigned concludes that the Ohio Court of Appeals did not act unreasonably in finding that there was sufficient evidence to support Petitioner's conviction under § 2903.02(A).

Section 2903.02(A) of the Ohio Revised Code reads: "No person shall purposely cause the death of another or the unlawful termination of another's pregnancy." § 2903.02(A). But Ohio law allows a defendant to be convicted of § 2903.02(A) purposeful murder under a theory of complicity. Complicity is, in relevant part, when a "person, acting with the kind of culpability required for the commission of the offense . . . [aids] or abet[s] another in committing the offense." O.R.C. § 2923.03(A)(2). In other words, Petitioner may be found guilty of murder if the state proves beyond a reasonable doubt that he (1) aided and abetted the principal offenders in committing the murder, and (2) shared their purposeful

11

criminal intent. *See* § 2923.03(A)(2); § 2903.02(A). "The Ohio Supreme Court has held that one is guilty as an aider and abettor if one 'supported, assisted, encouraged, cooperated with, advised, or incited the principal in the commission of the crime, and that the defendant shared the criminal intent of the principal. Such intent may be inferred from the circumstances surrounding the crime.'" *State v. Robinson*, No. L-02-1314, 2005 WL 195490, at *4 (Dist. 6 Ohio App. Ct. Jan. 28, 2005) (*quoting State v. Johnson*, 93 Ohio St.3d 240, 754 N.E.2d 796, syllabus (Ohio 2001)). "[C]riminal intent can be inferred from 'presence, companionship and conduct before and after the offense is committed.'" *Id.* (*quoting Johnson*, 93 Ohio St.3d at 245). A purpose to kill may also be inferred from the use of a firearm in a manner calculated to destroy life. *State v. Stallings*, 89 Ohio St.3d 280, 290 (Ohio 2000) (*quoting State v. Robinson*, 161 Ohio St. 213, syllabus ¶ 5 (Ohio 1954)); *State v. Shue*, 97 Ohio App.3d 459 (Ohio App. 9 Dist. 1994).

Although the evidence of criminal intent was largely circumstantial, the prosecution presented sufficient evidence of Petitioner's "presence, companionship and conduct before and after the offense," *id.*, from which the jury could reasonably infer that Petitioner shared the purposeful criminal intent of Granger and Brady. *See United States v. Acosta*, 924 F.3d 288, 297 (6th Cir. 2019) ("Circumstantial evidence alone is sufficient to sustain a conviction and such evidence need not remove every reasonable hypothesis except that of guilt." (*quoting United States v. Wettstain*, 618 F.3d 577, 583 (6th Cir. 2010) (internal quotation marks omitted))). The prosecution presented evidence that Petitioner informed the group of Elmore's

12

involvement in the robbery at their house, participated in the discussion working out the plan to get information out of Elmore about the robbery, was present in the front passenger seat of the van when Hager drove the group to the victim's home, and helped to destroy evidence afterward. Even if this Court would weigh the evidence differently if judging this case as a member of the jury in the first instance, these facts are well within the range and types of evidence accepted by the state as proof of purposeful intent.

Petitioner counters that, in light of the "Supreme Court's requirement that '*all of the evidence* is to be considered' when reviewing a sufficiency challenge," it was unreasonable for the Ohio appellate court to "ignore[] or dismiss[] key portions of Ms. Hager's testimony" in which she said that there were no plans or discussions about killing or harming the victim immediately upon encountering him. (ECF No. 6 at PageID 367 (*quoting Jackson*, 443 U.S. at 319 (emphasis in original)).) But an appellate court, when faced with a record of conflicting evidence open to different inferences, reviews the evidence in the light most favorable to the prosecution to preserve the jury's role as factfinder. *Smith v. Cook*, 956 F.3d 377, 396 (6th Cir. 2020) (*quoting Jackson*, 443 U.S. at 326). It looks at "whether there is sufficient evidence which, *if credited*, could support the conviction." *Schlup v. Delo*, 514 U.S. 298, 330 (1995) (emphasis added). It was for the jury, in its "factfinder's role as weigher of the evidence," *Jackson*, 443 U.S. at 319, to assess Hager's testimony regarding the group's plans and weigh its significance against the other evidence presented, to resolve any conflicts in the testimony or issues of witness credibility.

*United States v. Williams*, 998 F.3d 716, 727–28 (6th Cir. 2021) (*quoting Jackson*, 443 U.S. at 319). Because the jury convicted Petitioner of the § 2903.02(A) murder charge, the Ohio Court of Appeals acted appropriately when it resolved any conflicts in the evidence for the prosecution and specifically reviewed the sufficiency of the evidence that supports the conviction.

Accordingly, the Undersigned finds that the state appellate court's determination that there was sufficient evidence to infer criminal intent under § 2903.02(A) was neither an unreasonable application of clearly established federal law nor based on an unreasonable determination of the facts. It is thus recommended that Petitioner's first ground for relief be **DENIED**.

### B.    Ineffective Assistance of Counsel

Petitioner claims that his trial counsel was constitutionally ineffective for failing to object to multiple instances of prosecutorial misconduct and to an "inapplicable, prejudicial jury instruction" on causation. (ECF No. 6, at PageID 364.) Petitioner argues that counsel's failures were not grounded in strategy, and considered cumulatively, undermine confidence in the outcome of the trial. (*Id*.) He contends that the state appellate court acted unreasonably when it rejected his claims on direct appeal. (*Id*. at PageID 365.)

To establish ineffective assistance, Petitioner must show that his counsel's performance was deficient and that he was prejudiced as a result. *Strickland v. Washington*, 466 U.S. 668, 687 (1984).  Counsel is "'strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of

reasonable professional judgment,' with the burden to show otherwise resting squarely on the defendant." *Burt v. Titlow*, 571 U.S. 12, 13 (2013) (*quoting Strickland*, 466 U.S. at 690 (internal citation omitted)). Petitioner "bears the burden of rebutting the presumption that trial counsel 'acted for tactical reasons rather than through sheer neglect.'" *Berry v. Palmer*, 518 F. App'x 336, 339–40 (6th Cir. 2013) (*quoting Yarborough*, 540 U.S. at 8). "[T]he Constitution does not insure [sic] that defense counsel will recognize and raise every conceivable constitutional claim." *Lundgren*, 440 F.3d at 774 (*quoting Engle v. Isaac*, 456 U.S. 107, 134 (1982) (internal quotation marks omitted)). Any single failure to object generally will not be deficient performance unless the alleged error "is so prejudicial to a client that failure to object essentially defaults the case to the state." *Id.* It is only when counsel "so consistently fail[s] to use objections, despite numerous and clear reasons for doing so, that counsel's failure cannot reasonably have been said to have been part of a trial strategy or tactical choice." *Id.* at 774–75 (*citing Hodge v. Hurley*, 426 F.3d 368, 376 (6th Cir. 2005)).

### 1.    Failure to Object to Jury Instructions

Petitioner claims that counsel was ineffective for failing to object to the definition of "cause" included in the pattern jury instructions because the wording may have misled the jury to voting for conviction based on his failure to stop Granger and Brady from shooting the victim. (ECF No. 6, at PageID 372–73.) He argues that this failure is deficient performance in the context of an accomplice-liability scenario, such as that present here, because it could lead to a murder

15

conviction for a non-principal offender who the jury concludes failed to act to prevent the principal offender from murdering the victim. (*Id.* at PageID 373.) Petitioner points to two instances in which he contends that counsel should have objected to the jury instruction: when the instruction was first given and again when the jury asked a question about whether a failure to act constituted murder. (*Id.*) He contends that counsel had a duty to object when the instruction was first given because he did not have a duty to act and the state never argued that he did, and a duty to object when the jury question was received because it indicated that the jury did not believe that Petitioner's original intent was to kill the victim. (*Id.* at PageID 373–74.)

Respondent argues that Petitioner's barebones description of his complaint in his petition failed to satisfy *Strickland*'s requirement that a petitioner specify the acts or omissions of counsel that constituted ineffective assistance. (ECF No. 5, at PageID 357.) Respondent asserts that a vague or conclusory allegation that trial counsel "failed to object to a prejudicial jury instruction," without identifying the particular instruction at issue, lacks the factual support necessary to meet Petition's pleading burden, and thus does not warrant habeas relief. (*Id.*) But Respondent also argues that Petitioner's claim fails on the merits because "the Court of Appeals reasonably rejected [Petitioner]'s claim that his trial attorney's performance was prejudicially deficient by failing to object to the causation/failure to act jury instruction because the overwhelming evidence presented at trial

16

supported a finding of guilty for complicity by way of aiding and abetting." (*Id.* at

PageID 358.)

The Ohio Court of Appeals denied Petitioner's claim on direct appeal, holding

that Petitioner had not shown evidence he was prejudiced because the jury could

have convicted him as an aider or abettor rather than for his failure to act:

> Appellant argues his counsel's performance was deficient in failing to object to the "generic" jury instruction on causation both when the instruction was presented to the jury and when the jury submitted a question about whether appellant could be convicted of purposeful murder for failing to act. (Appellant's Brief at 28.) Appellant contends these failures led to the likelihood that the jury voted to convict him of purposeful murder because he failed to act to prevent Granger and Brady from shooting Mr. Elmore.

> The jury instructions at issue in this case are as follows:

>> The defendant may be convicted as a principal offender or as a complicitor or an aider and abettor to any or all counts and specifications of the indictment. Complicity applies to every count and specification of the indictment.

>> Before you can find the defendant guilty of a crime or specification as a complicitor or aider and abettor, you must find beyond a reasonable doubt that on or about 31st [sic] day of May, 2015, in Franklin County, the defendant solicited or procured another to commit the offense or aided or abetted another in committing the offense with the same knowledge or purpose as required by the offense under consideration.

>> * * *

>> * * * An aider or abettor is one who aids, assists, encourages, cooperates with, advises, or incites another to commit a crime, and participates in the commission of the offense by some act, word or gesture.

>> "Aid" means to help, assist, or strengthen. "Abet" means to encourage, counsel, incite, or assist.

>> * * *

>> Count 1. * * * Before you can find the defendant guilty of Murder, you must find that the State has proved beyond a reasonable doubt that on or about the 31st day of May, 2015, in Franklin

17

County, Ohio, the defendant purposefully caused the death of Courtney Elmore. * * *

* * *

"Cause" is an act or failure to act which in the natural and continuous sequence directly produces the death, and without which it would not have occurred. Cause occurs when the death is the natural and foreseeable result of the act or failure to act.

If a wound is inflicted with a deadly weapon in a manner calculated to destroy life, the purpose to cause the death may be inferred from the use of the weapon along with all the other facts and circumstances in evidence.

* * *

The State of Ohio has presented a theory that the defendant acted in complicity with the principal offender or offenders in the commission of the offenses charged. A person who is complicit with another in the commission of a criminal offense is regarded as guilty as if he/she personally performed every act constituting the offense. This is true even if he/she did not personally perform every act constituting the offense or was not physically present at the time the offense was committed. * * *

A defendant may be convicted of an offense, such as murder, either as a principal offender or as a complicitor. Complicity occurs when a person aids or abets another in the commission of an offense. An indictment charging a defendant as a principal offender also charges the defendant with aiding and abetting.

Before you can find a defendant guilty as a complicitor, you must find beyond a reasonable doubt that on or about the 31st of May, 2015, and in Franklin County, that the defendant aided and abetted another in the commission of the offense of murder.

(Emphasis added.) (Tr. Vol. 3 at 537–41; see also Apr. 20, 2018 Jury Instructions at 7-10.) Appellant's trial counsel did not object to the causation instruction. As referenced by appellant, the trial court received the following question from the jury during deliberations: "If the outcome of the evening of May 31st changed the original intent, if the defendant had no knowledge (but he had knowledge of original intent), can [appellant] be found [guilty of murder for] 'failing to act?'" (Tr. Vol. 3 at 600.) The trial court responded by indicating "[c]ause" was defined in the jury instructions under Count 1; defense counsel did not object. (Tr. Vol. 3 at 600.)

In this case, even if, for sake of argument, defense counsel should have objected to the failure to act instruction or response to the jury question,

18

appellant has not shown that "but for counsel's unprofessional errors, there is a reasonable probability that the result of the proceeding would have been different" due to record evidence supporting appellant's conviction for murder under complicity as an aider or abettor. *Jones*, 2019-Ohio-2134, at ¶ 50; *Strickland*, 466 U.S. 668.

"[A] sole instruction must be viewed within context of the whole set [of jury instructions] rather than in isolation." *State v. Huddleston*, 3d Dist. No. 8-17-21, 2018-Ohio-1114, ¶ 29, *appeal not allowed*, 153 Ohio St.3d 1452, 2018-Ohio-2026. *State v. Rutledge*, 10th Dist. No. 17AP-590, 2019-Ohio-3460, ¶ 31. See *Cromer v. Children's Hosp. Med. Ctr. of Akron*, 142 Ohio St.3d 257, 2015-Ohio-229, ¶ 35 ("An unnecessary, ambiguous, or even affirmatively erroneous portion of a jury charge does not inevitably constitute reversible error.). [sic] Furthermore, "we will not speculate as to why the jury asked [a certain] question for purposes of its deliberations." *State v. Ford*, 10th Dist. No. 07AP-803, 2008-Ohio-4373, ¶ 64.

. . . .

Considering all of the above, we find appellant has not demonstrated that his counsel's performance regarding the failure to act instruction and jury question prejudiced him. *Huddleston* at ¶ 30–31. *See also State v. Sims*, 10th Dist. No. 96APA05-676 (Feb. 20, 1997) (finding in part that even if instruction on complicity was improper, no prejudice resulted where the jury could have found the defendants guilty "whether as principals or as abettors"); *State v. Brown*, 10th Dist. No. 94APA03-298 (Nov. 29, 1994) (finding no prejudicial error in failure to act language in causation instruction when viewed in light of the entire instructions and record evidence supported the guilty verdict); *State v. Overton*, 10th Dist. No. 09AP-858, 2010-Ohio-5256, ¶ 18, *vacated in part on other grounds*, 128 Ohio St.3d 353, 2011-Ohio-740 (finding trial court did not err by refusing to give supplemental and modified jury instructions in response to questions from the jury during their deliberations relating to failure to act language in causation instruction where inclusion of that language was not prejudicial on the record); *State v. Sipos*, 9th Dist. No. 2238 (Aug. 5, 1987) (finding, based on the entire charge given to the jury by the trial court, the totality of the evidence presented by the state and evidence the defendant was the [sic] guilty as an "aider and abettor," the defendant was not unduly prejudiced by the inclusion of the failure to act language within the definition of "cause").

*Young*, 2020 WL 704577, at *21–23.

"Failure to object to a jury instruction can constitute such a grave error [that counsel was not functioning as the counsel guaranteed by the Sixth Amendment]," 

*Lucas v. O'Dea*, 178 F.3d 412, 418 (6th Cir. 1999) (*quoting Gray v. Lynn*, 6 F.3d 265,

19

269 (5th Cir. 1993)), but the failure to raise a meritless objection is neither deficient nor prejudicial, *Moody v. United States*, 958 F.3d 485, 492 (6th Cir. 2020) (*citing Bennett v. Brewer*, 940 F.3d 279, 286–87 (6th Cir. 2019), and *Sutton v. Bell*, 645 F.3d 752, 755 (6th Cir. 2011)). "[N]ot every ambiguity, inconsistency, or deficiency in a jury instruction rises to the level of a due process violation." *Middleton v. McNeil*, 541 U.S. 433, 437 (2004) (per curiam). Due process is implicated only when the instruction relieves the prosecution from having to prove an essential element of the crime. *See Sandstrom v. Montana*, 442 U.S. 510, 520–21 (1979) (*citing In re Winship*, 397 U.S. 358, 364 (1970)). A challenged jury instruction is not assessed in isolation, but in the context of the overall charge. *Middleton*, 541 U.S. at 437 (*citing Boyde v. California*, 494 U.S. 370, 378 (1990)); *Jones v. United States*, 527 U.S. 373, 391 (1999) (holding that instructions that could be ambiguous in the abstract may be cured when read in conjunction with other instructions (*citing Bryan v. United States*, 524 U.S. 184, 199 (1998))). When the charge as a whole is ambiguous, "the question is whether there is a 'reasonable likelihood that the jury has applied the challenged instruction in a way' that violates the Constitution." *Middleton*, 541 U.S. at 437 (*quoting Estelle v. McGuire*, 502 U.S. 62, 72 (1991)). "[I]t is not enough that there is some 'slight possibility' that the jury misapplied the instruction," *Waddington v. Sarausad*, 555 U.S. 179, 190–91 (2009) (*citing Weeks v. Angelone*, 528 U.S. 225, 236 (2000)), the instruction must have "so infected the entire trial that the resulting conviction violates due process," *id.* (*quoting Estelle*, 502 U.S. at 72).

Petitioner has not shown a reasonable likelihood that the jury misapplied the failure-to-act instruction in light of the accuracy of the jury instructions and the case presented at trial. Petitioner does not argue that the instructions misstated the law. While "[a]n omission, or an incomplete instruction, is less likely to be prejudicial than a misstatement of the law," *Henderson v. Kibbe*, 431 U.S. 145, 155, (1977), here there is not even an incomplete instruction. When the jury instructions already accurately set forth the relevant elements of the crime, it is reasonable to assume a change in wording would not be "sufficiently likely" to produce a different result. *See Jacobs v. Sherman*, 301 F. App'x 463, 470 (6th Cir. 2008) ("Because the jury instructions in this case did properly set forth the elements of larceny, it is reasonable to conclude that it is not sufficiently likely that the jury would have reached a different result to consider counsel's actions prejudicial to Jacobs under *Strickland*." (*citing Strickland*, 466 U.S. at 687)); *cf. Boyde v. California*, 494 U.S. 370, 380–81 (1990) (explaining that, when a case is submitted to a jury on both a constitutional theory and an unconstitutional theory, it has only found reversal appropriate when the "jury is clearly instructed by the court that it may convict a defendant on an impermissible legal theory, as well as on a proper theory"). Moreover, the definition of "cause" was the sole reference to a "failure to act" in the jury instructions. The charge as a whole focused on the actions necessary to prove complicity.

When the instructions are read in the context of the case presented to the jury at trial, the probability of jury misapplication appears even lower. "[T]he

21

proper inquiry is not whether the instruction 'could have' been applied in an unconstitutional manner, but whether there is a reasonable likelihood that the jury *did* so apply it." *Victor v. Nebraska*, 511 U.S. 1, 6 (1994) ("[T]he proper inquiry is not whether the instruction 'could have' been applied in an unconstitutional manner, but whether there is a reasonable likelihood that the jury *did* so apply it." (emphasis in original)). The state's case was focused on proving complicity and the evidence presented at trial overwhelmingly supported conviction for aiding and abetting; the prosecution never argued that Petitioner's failure to act "caused" the victim's death. In order to show that Petitioner was guilty of § 2903.02(A) murder based on a complicity theory, the state pointed to his specific actions—planning the visit to the victim's house, giving his gun to Brady, being present in the front seat of the van, destroying evidence after the crime—as evidence of aiding and abetting. (*See* ECF No. 7-4, at PageID 1113–15, 1132–34.) The Ohio Court of Appeals was thus not unreasonable for declining to assume that the jury adopted an unnatural and strained reading of its instructions and the case presented at trial without clear evidence on the record that it had done so.

The Undersigned also concludes that counsel's failure to object to the instructions—either when they were originally given or when the jury asked a question—was not deficient performance. Because the state appellate court did not reach the performance prong of *Strickland*, the Court reviews this question *de novo*. *See Rayner v. Mills*, 685 F.3d 631, 638 (6th Cir. 2012).

Counsel does not act ineffectively by failing to lodge a meritless objection to a constitutionally adequate instruction. *See Moody v. United States*, 958 F.3d 485, 492 (6th Cir. 2020) (*citing Bennett v. Brewer*, 940 F.3d 279, 286–87 (6th Cir. 2019), and *Sutton v. Bell*, 645 F.3d 752, 755 (6th Cir. 2011)). If the jury instructions were constitutionally adequate, the failure to object is not error. *See Jacobs*, 301 F. App'x at 468 (holding that counsel's failure to object was not objectively unreasonable when the instructions accurately stated the elements of the crime). Courts determine adequacy by looking to "whether there is a reasonable likelihood that the jury has applied the challenged instruction in a way that violates the Constitution." *Jones v. United States*, 527 U.S. 373, 390 (1999) (*quoting Estelle v. McGuire*, 502 U.S. 62, 72 (1991) (internal quotation marks omitted)). As previously explained, misapplication by the jury was unlikely here because the instructions accurately reflected the elements of the crime and defined the relevant terms and the state did not present a theory based on the failure to act. Thus, counsel's failure to object to constitutionally adequate instructions that were unlikely to be misapplied was not unreasonable.

Petitioner argues that the jury's question about the failure to act was evidence of its confusion, and counsel erred by not objecting when the judge responded to the jury's question by directing it to the definition of "cause" in Count 1 of the jury instructions. (ECF No. 6, at PageID 373–74.) In *Waddington v. Sarausad*, the Supreme Court overturned an appellate court opinion that had found a jury's questions were sufficient evidence that the jury had misunderstood and

23

misapplied a jury instruction. It held that when "a judge 'respond[s] to the jury's question by directing its attention to the precise paragraph of the constitutionally adequate instruction that answers its inquiry,' and the jury asks no followup question, this Court has presumed that the jury fully understood the judge's answer and appropriately applied the jury instructions." *Waddington*, 555 U.S. at 196 (*quoting Weeks*, 528 U.S. at 234). The judge's answer was satisfactory, according to the Court, because he "pinpointed his answers to the particular instructions responsive to the questions and those instructions reflected state law." *Id*. Moreover, when the "jury was adequately instructed, and . . . the trial judge responded to the jury's question by directing its attention to the precise paragraph of the constitutionally adequate instruction that answers its inquiry," the Constitution requires nothing more. *Weeks*, 528 U.S. at 234. Here, the trial judge responded to the jury's question in precisely the manner approved by the Supreme Court, directing the jury to the relevant portion of the instructions. Without evidence to the contrary, the jury is thus presumed to have understood and applied the instructions appropriately. Because Petitioner has not established that counsel's failure to object to the jury instructions was deficient or that the Ohio Court of Appeals' finding that he was not prejudiced was unreasonable, he has not shown that he received ineffective assistance of counsel.

### 2.     Failure to Object to Prosecutorial Misconduct

Petitioner argues that the state appellate court unreasonably applied *Strickland* to his claims that his counsel acted ineffectively by failing to object to

24

several instances of alleged prosecutorial misconduct. (ECF No. 6 at PageID 375.) Specifically, Petitioner points to the prosecutors' portrayal of Petitioner as a pirate during *voir dire* and opening remarks, their suggestion that Petitioner eliminated witnesses, their failure to correct a false statement made by state witness Chiquetta Hager, and their endorsement of Hagar's honesty and credibility. (*Id.*, at PageID 364.) "Trial counsel's inaction in the face of such numerous instances of misconduct," according to Petitioner, "undermines confidence in the correctness of the verdict, and thus violated the right to effective assistance of counsel secured by the Sixth and Fourteenth Amendments." (*Id.* at PageID 376.)

Respondent contends that "there is no substantial likelihood that the result of the trial would have been different had those objections been made and sustained," and Petitioner cannot show prejudice "in light of the unrefuted overwhelming evidence against him." (ECF No. 5, at PageID 360.) Respondent also argues that the state court's rejection of the underlying prosecutorial misconduct claims in its plain error review means that the counsel did not act unreasonably by failing to object because any objection would have been meritless. (*Id.*, at PageID 358.)

On direct appeal, Petitioner raised claims of both prosecutorial misconduct and ineffective assistance for counsel's failure to object to the alleged prosecutorial misconduct. Because Petitioner had not objected during the trial, the Ohio Court of Appeals reviewed the prosecutorial misconduct claims for plain error.[1] The court

---

[1] Ohio's contemporaneous objection rule requires parties to preserve errors for appeal by objecting at trial when the error could have been avoided or corrected. *State v. Mason*, 82 Ohio St. 3d 144, 162

then denied the related ineffective assistance claims based on its finding that the

underlying conduct was not plain error:

> "When a claim of ineffective assistance of counsel is based on counsel's
> failure to file an objection or file a motion, the appellant must demonstrate
> that the objection or motion had a reasonable probability of success." *Jones*
> at ¶ 52. "If the objection or motion would not have been successful, then the
> appellant cannot prevail on an ineffective assistance claim." *Id.*
>
> Furthermore, "'where the failure to object does not constitute plain error,
> the issue cannot be reversed by claiming ineffective assistance of counsel.'"
> *State v. Roy*, 10th Dist. No. 14AP-223, 2014-Ohio-4587, ¶ 20, quoting *State
> v. Carson*, 10th Dist. No. 05AP-13, 2006-Ohio-2440, ¶ 51. See also *Rogers*,
> 2015-Ohio-2459, at ¶ 22 (stating the plain error review employs the "the
> [sic] same deferential standard for reviewing ineffective assistance of
> counsel claims").
>
> Here, appellant imports the same arguments he made under his first
> assignment of error, which we reviewed under a plain error standard due to
> the lack of objection at trial to all the alleged instances of prosecutorial
> misconduct. Having previously held, in addressing appellant's first
> assignment of error, that appellant did not demonstrate plain error
> regarding prosecutorial misconduct, we conclude appellant's argument in
> this regard likewise fails to satisfy the second prong of the *Strickland* test.
> *Jones* at ¶ 47. Therefore, appellant's argument on counsel's failure to object
> to the various instances of alleged prosecutorial misconduct lacks merit.

*Young*, 2020 WL 704577, at *20–21.

Petitioner accuses the state court of "engag[ing] in sophistry, asserting that if

the misconduct can be said not to be plain error requiring reversal, then an

appellant cannot successfully assert ineffective assistance based on trial counsel's

failure to object to such misconduct." (ECF No. 6, PageID 375.)

The state appellate court's determination that the prejudice required for

plain error is the same as that needed for *Strickland* is consistent with federal law.

Ohio Crim.R. 52(B), based on Fed. Crim.R. 52(b), allows state appellate courts to

---

(1998). The failure to object at trial waives ordinary appellate review, and the issue is instead
reviewed only for plain error. *State v. Murphy*, 91 Ohio St. 3d 516 (Ohio 2001).

correct "plain errors or defects affecting substantial rights" despite the absence of timely objection at trial. The Ohio Supreme Court has interpreted the state rule to be coterminous with the corresponding federal rule. *See State v. Rogers*, 143 Ohio St. 3d 385, 392, (Ohio 2015); *State v. Hill*, 92 Ohio St.3d 191, 199 n.2 (Ohio 2001). Under both the Ohio and federal rules, plain error requires (1) an error, (2) that is obvious, and (3) affects substantial rights. *See State v. Barnes*, 94 Ohio St.3d 21, 27, 2002-Ohio-68, 759 N.E.2d 1240; *Rosales-Mireles v. United States*, 138 S.Ct. 1897, 1904–05 (2018). The United States Supreme Court explicitly adopted the prejudice standard from *Strickland* for the third prong in the Fed. Crim.R. 52(b) plain error test. *See United States v. Dominguez Benitez*, 542 U.S. 74, 81–83 (2004). Thus, to affect substantial rights—under both state and federal rules—there must be "a reasonable *probability* that the error resulted in prejudice—the same deferential standard for reviewing ineffective assistance of counsel claims." *State v. Tench*, 156 Ohio St.3d 85, 124 (Ohio 2018) (*quoting Rogers*, 143 Ohio St. 3d at 392 (emphasis in original)); *see also Molina-Martinez v. United States*, 578 U.S. 189, 193–94 (2016) (defining the requirement of affecting substantial rights in the federal rules as "a reasonable probability that, but for the error, the outcome of the proceeding would have been different" (*quoting Dominguez Benitez*, 542 U.S. at 76 (internal quotation marks omitted))). Because the state courts have explicitly adopted *Strickland* prejudice as the standard for plain error, the Ohio Court of Appeals acted reasonably when it relied on its plain error analysis to decide the issue of *Strickland* prejudice.

Petitioner also contends that the state appellate court's approach "allowed [it] to atomize each prosecutorial misconduct claim earlier in its opinion, then improperly and unreasonably use that atomization to thwart [Petitioner's] showing that trial counsel's performance throughout the entirety of the trial was deficient." (ECF No. 6 at PageID 376.) While a consistent failure to raise legitimate objections can overcome the presumption that counsel's decision not to object was the result of a reasonable trial strategy, *Lundgren*, 440 F.3d at 774–75 (*citing Hodge*, 426 F.3d at 376), Petitioner has not shown that any such pattern exists here, even when his prosecutorial misconduct claims are considered collectively. Moreover, the numerous objections counsel did raise throughout trial further undermine the notion that there was more widespread neglect here. (*See, e.g.*, ECF No. 7-2, at PageID 623; ECF No. 7-3, at PageID 666, 685, 830, 831, 835, 849, 851; ECF No. 7-4, at PageID 934, 1031, 1064.)

a. Use of Pirate Analogy

Petitioner first complains that the prosecutor improperly employed a pirate analogy during *voir dire* and her opening statement, likening Petitioner to a known criminal and implying that he had killed or intimidated witnesses. (ECF No. 6, at PageID 369 (*citing* ECF No. 7-1, at PageID 454–56).) He argues that the prosecutor's suggestion was inherently damaging and denied him the presumption of innocence to which he was entitled, yet his trial counsel failed to lodge any objection. (*Id*. at PageID 370.) He also objects to the prosecutor's remark that he and Hager were "partners in crime." (*Id*.)

28

The Ohio Court of Appeals denied Petitioner's ineffective assistance claim based on its finding that the prosecutor's use of the pirate analogy did not rise to plain error:

> Appellant contends the prosecutor improperly branded both Ms. Hager and appellant as "pirates" throughout voir dire and "partners in crime" once during opening statements, thus portraying appellant as a criminal not entitled to the presumption of innocence. (Appellant's Brief at 8, 9.) Appellant also contends the prosecutor within this exchange implied appellant either killed or intimidated potential witnesses.
>
> The relevant exchange during voir dire occurred when the prosecutor asked a prospective juror to describe a pirate, then stated "[d]oes anyone here like pirates? They're criminals on the high seas, right?" (Voir Dire Tr. at 74.) The prosecutor then asked the juror how he would prosecute the pirates, for example "Blackbeard," given pirates leave no physical evidence or witnesses behind. (Voir Dire Tr. at 75.) The prosecutor agreed with the juror's answer that they would call other pirates as witnesses, stating "[c]all the other pirates, right? That is all we have left, right? Does that make sense to everybody? The pirates got rid of all of the other witnesses. All we can do is turn some of the pirates against the other pirate. Right?" (Voir Dire Tr. at 75.)
>
> As an example, the prosecutor asked the juror whether he thought "Bluebeard," who "agree[d] to work with us and prosecute Blackbeard, who is the captain on the ship," would want "something in exchange for testifying against Blackbeard," and whether it would bother the juror if Bluebeard got a deal or whether the juror would still listen to Bluebeard. (Voir Dire Tr. at 75–76.) The prosecutor then asked the whole group whether anybody was not "going to be willing to listen to a pirate, period" or whether they would "give them a fair shake." (Voir Dire Tr. at 78.) Later, during the state's opening statement at trial, the prosecutor told the jury:
>
>> [Y]ou are going to meet Chiquetta Hager. She is our pirate. And we are going to be honest with you about her. She got a deal. We made that deal with Chiquetta, hundred percent. But she did take ownership of what she did, and she will be punished for what she did, but she did get a deal.
>>
>> * * *
>>
>> Chiquetta is the mother of [appellant's] children. She was his partner in crime. She was with him since she was 17. They were together a long time. * * * [S]he was there, she was with him.

> She is our pirate. Again, I ask that you listen to her with an open mind.

(Tr. Vol. 1 at 36–37.)

Appellant has not provided legal authority specific to prosecutorial misconduct during voir dire generally or the impropriety of a prosecutor stating its key witness and the defendant were partners in crime, or using a similar analogy, when pursuing a guilty verdict by way of complicity. Nevertheless, we disagree with appellant that the statements "eviscerated the presumption of innocence" or otherwise rendered appellant's trial unfair warranting reversal on the facts of this case. (Appellant's Brief at 5.)

Within the full content of the voir dire transcript, the prosecutor made it clear that the state pursued a theory of the case in which defendant was guilty as an aider and abettor as part of a larger group and was attempting to see whether any potential juror would "automatically discount" a witness because he or she was involved in the crime or received a plea deal. (Voir Dire Tr. at 79.) Likewise, during the opening statement and at trial, the jurors were made aware the state pursued a theory of guilt by way of complicity in which appellant admittedly did not pull the trigger of the gun but aided and abetted those who did. The trial court specifically instructed the jury that opening statements are "not evidence, but * * * a road map in order for both parties to provide you with what they believe the evidence is going to show throughout the trial." (Tr. Vol. 1 at 34.) Throughout the trial, the state presented evidence in support of the aider and abettor theory. Furthermore, we do not find the prosecutor's reference to pirates getting rid of witnesses, within the context of the voir dire questioning and considering the full record, rendered appellant's trial unfair.

In other words, the context of the statements shows the prosecutor's comments presented the jury a theory it would attempt to prove, rather than a statement as to appellant's criminality that destroyed his presumption of innocence, as contended by appellant. On this record, we find appellant has not demonstrated plain error in regard to the prosecutor's pirate analogy and "partner[s] in crime" reference. (Appellant's Brief at 8.)

*Young*, 2020 WL 704577, at *6–7. Because the Ohio Court of Appeals decided the issue of prejudice on the merits, its decision is subject to AEDPA deference here. This means that the Court may not grant relief unless the state court's decision "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," or was based on an unreasonable determination of the facts. § 2254(d).

30

The state appellate court's determination that the pirate references were not prejudicial when considered in the context of the prosecutor's full remarks during *voir dire* and opening statements was reasonable. The pirate analogy was one in a series of different hypotheticals offered by the prosecutor during *voir dire* to illustrate various relevant legal concepts to the prospective jurors. Other scenarios presented included imagining one of the prospective jurors getting intoxicated and stealing their neighbor's television, a bank robbery, a mugging at an ATM, stealing newspapers, high school students breaking a beaker in the science lab, and eating a freshly-baked cherry pie. The prosecutor also communicated the fanciful nature of the pirate example when she began by describing pirates as "criminals on the high seas . . . pillaging and plundering and burning down ships and burying people at the bottom of the ocean . . . *[l]ike you read about in children's books*." (*Id.* at PageID 454 (emphasis added).) At other points during *voir dire*, the prosecutor remarked on her use of hypotheticals, asking a prospective juror if they were comfortable getting a hypothetical, (*id.* at PageID 443–44), and introducing a new fact pattern with "let me give you an example" or "let me give you a scenario," (*id.* at PageID 461). Together, these comments would reinforce for the jury that the prosecutor's reference to pirates was simply one more random fact pattern being employed to illustrate a concept.

The Ohio Court of Appeals reasonably concluded that, rather than destroying Petitioner's presumption of innocence by labeling him a criminal, the references to pirates and partners in crime were used to present and explain a legal theory of

31

complicity which the state intended to prove at trial. In context, the prosecutor's remarks during *voir dire* would be understood as an attempt to explain why the state needed to rely on witnesses who also participated in the crime. Later references to Chiquetta Hager as "our pirate" and to Petitioner and Hager as "partners in crime" during opening statements can be understood—in light of the pirate hypothetical discussed during *voir dire*—to communicate that Hager is a state witness despite also having participated in the crime.

Petitioner has not pointed to anything in the record that would suggest jurors might have taken the references to pirates or partners in crime more literally than intended. The engagement of the prospective jurors during *voir dire* reflected in the transcripts instead seems to suggest that they fully understood that the prosecutor was creating fictional scenarios to introduce legal concepts and ensure they understood and were comfortable applying the relevant legal standards. (*See, e.g.*, ECF No. 7-1, at PageID 454.)

While the lack of prejudice is alone fatal to Petitioner's claim, Petitioner also has not shown that counsel's failure to object fell outside the range of reasonable professional conduct. Because the Ohio Court of Appeals did not address the deficient performance prong of *Strickland*, AEDPA deference does not apply and the Court reviews the reasonableness of counsel's performance *de novo*. See *Rayner*, 685 F.3d at 638.

Petitioner has not shown that counsel's decision not to object to the pirate analogy was an unreasonable strategic choice. When it was defense counsel's turn to

32

address the prospective jurors during *voir dire*, she began by joking that the prosecutor stole some of her favorite hypotheticals, further reinforcing for the jury that these were routine and fictional stories with no connection to the facts of this case. (*See* ECF No. 7-1, at PageID 483–84.) It was not unreasonable for counsel to reason that she could better build a rapport with the jury in this manner. Nor would it be unreasonable for counsel to conclude that objecting to the hypothetical might draw attention to it or even plant the seeds in jurors' heads that the pirate story was not as innocuous as it seemed and instead veered closer to the truth. *See Schauer v. McKee*, 401 F. App'x 97, 101 (6th Cir. 2010) (holding that the wish not to draw attention to an improper statement is a legitimate consideration (*citing United States v. Caver*, 470 F.3d 220, 244 (6th Cir.2006))). Because counsel's failure to object was a valid tactical choice and the state court reasonably concluded that Petitioner was not prejudiced, Petitioner has not shown that he received ineffective assistance of counsel.

### b.  Failure to Correct False Statement

Petitioner argues that the prosecution failed to correct a false statement about whether Hager was subject to a sentence reduction through judicial release. (ECF No. 6, at PageID 370–71.) He claims that counsel's failure to object was deficient performance because "there was no strategic reason to allow the jury to believe that Ms. Hager was ineligible for judicial release before she served a full eight years." (*Id.* at PageID 371.)

The Ohio Court of Appeals held that the challenged statement was not a material falsehood, and thus the prosecutor's failure to correct it was not plain error:

> Appellant contends Ms. Hager testified at trial that "she would have to serve eight years, and that her sentence would not be subject to reduction through judicial release," and the prosecutor was aware this was a false statement and had a duty to correct it. (Appellant's Brief at 9.) Specifically, appellant argues the state was aware Ms. Hager pleaded guilty to abduction and involuntary manslaughter, neither of which, according to appellant, involved mandatory prison time. In appellant's view, given Ms. Hager was sentenced to eight years, she could apply for release after five years under R.C. 2929.20(C)(4), which given her time served, Ms. Hager could theoretically apply for release approximately two years after her testimony.
>
> "The knowing use of false or perjured testimony constitutes a denial of due process if there is any reasonable likelihood that the false testimony could have affected the judgement of the jury." (Citation omitted.) *State v. Iacona*, 93 Ohio St.3d 83, 97 (2001). "Such a claim is in the nature of an allegation of prosecutorial misconduct, and the burden is on the defendant to show that (1) the statement was actually false; (2) the statement was material; and (3) the prosecution knew it was false." (Internal quotation omitted.) *Id.*
>
> Here, a pretrial hearing shows the state recognized that a co-defendant, presumably Ms. Hager, received a plea deal whereby she pled guilty to "abduction and involuntary manslaughter and is receiving a [joint] recommendation of eight years." (May 31, 2017 Tr. at 12.) During direct questioning by the prosecutor at trial, Ms. Hager said she agreed to a plea deal requiring her to "testify and do the eight years" of prison after pleading guilty to abduction and manslaughter. (Tr. Vol. 2 at 262, 265.) The prosecutor followed up by asking "you have not been sentenced yet, but the agreement is that you are going to get eight years in prison," and Ms. Hager replied in the affirmative. (Tr. Vol. 2 at 263.) The prosecutor discussed with Ms. Hager, and offered into evidence, the proffer letter, plea agreement, and guilty plea, which is dated November 3, 2015. The guilty plea form shows Ms. Hager's plea of guilty to abduction, a third-degree felony, and involuntary manslaughter, a first-degree felony, and marks only the sentence imposed for the involuntary manslaughter charge (which, per the joint recommendation, is five years) as a "mandatory prison term." (Entry of Guilty Plea at 1.) Ms. Hager then agreed with the prosecutor that part of her motive for cooperating was that she "will get out after [her]eight years, [she] will get out to see [her] children [after that]." (Tr. at 266.)
>
> The statement appellant contends is materially false then occurred during cross-examination of Ms. Hager by appellant's counsel:

34

Q. Okay. And did you sign something called a proffer letter?

A. Yes.

Q. Okay. What is your understanding exactly of what a proffer letter is?

A. An agreement to a plea.

Q. And what is the agreement?

A. To testify in exchange for a certain amount of time.

Q. And what was that amount of time?

A. Eight years.

Q. All right. You remember that. Do you remember whether that was flat time or whether it was time credited for the part you had already done?

A. Flat time. But they said that for the time that I have been incarcerated would count.

Q. Okay. And did they ever talk to you about judicial release?

A. No.

Q. Do you know about judicial release?

A. I know what it is, but I don't qualify for it. It wasn't an option for me.

Q. Why not?

A. It was just never brought up.

Q. So you don't know whether you qualify or not?

A. Well, I asked my attorney whether there was a way I would get out earlier, and he said no.

Q. But you did believe you are getting credit for the time you served?

A. Yes.

(Tr. Vol. 2 at 345–47.) Later, in rebuttal on closing arguments, the prosecutor stated "[y]ou know [Ms. Hager] has a motive to tell the truth.

35

> She got a deal. * * * She gets her eight years, she is out and gets to see her kids. It is a pretty good motive to tell the truth." (Tr. Vol. 3 at 584.)
>
> Based on this record, even assuming, arguendo, that not all of Ms. Hager's eight-year sentence is mandatory, contrary to appellant's argument we do not consider the cited testimony to be a material falsehood. First, the cited statement is not plainly a false statement. Ms. Hager's testimony arguably encompasses her personal belief that she did not qualify for judicial release based on her conversations with her attorney. *See Iacona* at 97 (finding no prosecutorial misconduct where the witness gave an answer as far as he knew, which was "by its own terms, limited to his own personal knowledge"). Second, Ms. Hager testified she was motivated to tell the truth at least in part by her desire to complete her sentence and get out of jail, and we fail to see how the state's not clarifying her ability to potentially get out of jail sooner materially affected this proceeding on this record. Third, the jury had available for reference, as an admitted exhibit, Ms. Hager's guilty plea form that shows the particulars of Ms. Hager's sentence. Thus, even if the prosecutor had a duty to clarify Ms. Hager's statement on judicial release, we cannot say the failure to do affected appellant's substantial rights. Considering all the above, we find appellant has not demonstrated plain error in regard to the prosecutor failing to correct Ms. Hager's statement on judicial release.

*Young*, 2020 WL 704577, at *8–9. The state court's prejudice determination is subject to AEDPA deference, and the Court may not grant relief unless the state court's decision "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," or was based on an unreasonable determination of the facts. § 2254(d).

The appellate court's conclusion that Hager's statement was not false was not unreasonable. Hager explained during cross-examination the basis for her belief that she could not receive judicial release, and made clear that it was merely her personal understanding of her legal situation. If Hager truthfully stated the facts as she understood them, her statement would not be false even if her belief that she was ineligible for judicial release was, in fact, inaccurate. The prosecutors had no duty to correct, nor defense counsel to object, to a statement that was not false. *See*

36

*Moody*, 958 F.3d at 492 (holding that counsel's failure to raise a meritless objection is not deficient performance (*citing Bennett*, 940 F.3d at 286–87, and *Sutton*, 645 F.3d at 755)).

Yet even if Hager's statement was false and should have been corrected, the failure to do so was not prejudicial because it was unlikely to materially affect the jury's assessment of her credibility. As the Ohio Court of Appeals explained, Hager testified that she was "motivated to tell the truth at least in part by her desire to complete her sentence and get out of jail." *Young*, 2020 WL 704577, at *8. The possibility of earlier release does not undercut Hager's stated motivation. Nor would a mid-trial correction by the prosecutor have likely led the jury to reassess Hager's credibility, given that they had heard her frame her answer as her own understanding of her circumstances based on a conversation with her lawyer. Accordingly, Petitioner has failed to show that trial counsel erred by failing to object to the allegedly false statement or that he was prejudiced as a result.

### c. Vouching for a Witness's Credibility

Petitioner claims the prosecution improperly vouched for Hager's credibility during closing arguments and his counsel neglected to object. (ECF No. 6, PageID 371–72.) Specifically, he points to three occasions in which the prosecutor averred that Hager told the truth, never lied, and was believable. (*Id.*, at PageID 371 (*citing* ECF No. 7-4 at PageID 1122, 1128, 1131).) Petitioner argues that there was no strategic reason for counsel not to object because the trial court would have committed error if it did not instruct the jury to disregard the prosecutor's

37

statement. (*Id*. at PageID 372 (*citing State v. Purley*, No. 2002-Ohio-2689, 2002 WL 1302247, at \*7 (Ohio App. 6 Dist. 2002)).) He contends that counsel's error was prejudicial because the state's case relied heavily on Hager, and he could not have been convicted for anything other than tampering with evidence without her testimony. (*Id*. at PageID 374.) Moreover, Hager's credibility was inherently questionable, according to Petitioner, because she was testifying in exchange for leniency, had told detectives at least four different versions of her story, and was convicted of falsification. (*Id*.)

The Ohio Court of Appeals found that Petitioner had not shown the comments were plain error, and therefore could not establish prejudice:

> Appellant argues the prosecutor improperly vouched for its primary witness, Ms. Hager, during closing argument, and the jury may have believed the prosecutor was basing her statements either on evidence outside of the record or her years of experience. According to appellant, there is "no reason to believe that the jury did not consider that information when making its credibility determination regarding Ms. Hager's testimony." (Emphasis sic.) (Appellant's Brief at 11.)
>
> Prosecutors are afforded considerable latitude in closing arguments. *State v. Dillon*, 10th Dist. No. 04AP-1211, 2005-Ohio-2124, ¶ 50, citing *State v. Ballew*, 76 Ohio St.3d 244, 255 (1996). A prosecutor's isolated comments are not to be taken out of context and given their most damaging meaning. *State v. Noling*, 98 Ohio St.3d 44, 2002-Ohio-7044, ¶ 94, citing *Donnelly v. DeChristoforo*, 416 U.S. 637, 647 (1974). Rather, an appellate court must review a closing argument in its entirety to determine whether prejudicial error occurred. *Noling* at ¶ 94, citing *State v. Frazier*, 73 Ohio St.3d 323, 342 (1995). Moreover, "[i]n closing argument, a prosecutor may comment on ' " what the evidence has shown and what reasonable inferences may be drawn therefrom." ' " *Dillon* at ¶ 50, quoting *State v. Lott*, 51 Ohio St.3d 160, 165 (1990), quoting *State v. Stephens*, 24 Ohio St.2d 76, 82 (1970).
>
> However, "[i]t is improper for an attorney to express his or her personal belief or opinion as to the credibility of a witness." State v. Williams, 79 Ohio St.3d 1, 12 (1997). Conversely, a prosecutor may comment on the testimony and suggest the conclusions to be drawn from it. *State v. Crossty*, 12th Dist. No. CA2008-03-070, 2009-Ohio-2800, ¶ 45; *State v. Oteng*, 10th Dist. No.

14AP-466, 2015-Ohio-1231, ¶ 83. In doing so, the prosecutor may express his or her personal opinion if he bases that opinion on the evidence presented in court. *State v. Shine-Johnson*, 10th Dist. No. 17AP-194, 2018-Ohio-3347, ¶ 88, citing *State v. Belmonte*, 10th Dist. No. 10AP-373, 2011-Ohio-1334, ¶ 31; *State v. Keenan*, 66 Ohio St.3d 402, 408 (1993). Relatedly, improper " '[v]ouching occurs when the prosecutor implies knowledge of facts outside the record or places his or her personal credibility in issue.' " *State v. Thompson*, 141 Ohio St.3d 254, 2014-Ohio-4751, ¶ 200, quoting *State v. Davis*, 116 Ohio St.3d 404, 2008-Ohio-2, ¶ 232.

Appellant specifically argues the prosecutor improperly vouched for the credibility of Ms. Hager when she told the jury "[s]he didn't lie. * * * She never lied. * * * She is believable," and "[s]he told you the truth of what she knew." (Tr. Vol. 3 at 578, 584, 587.) Within the larger context of these cited passages, the prosecutor states:

> Chiquetta Hager took four times to give up [appellant]. That is credible. That makes sense. You heard about their relationship. You heard about their history. You saw the matching tattoos. Okay? It took her a while. And you heard about her statements and you heard from her and the detective. *She didn't lie.* She just was reluctant to give him up. *She never lied.* She just kind of omitted his involvement.
>
> * * *
>
> She was in a good place with him. She has no reason to lie against him. If she had some deep, dark motive against him, she would have made it worse. She would have said: Yeah, I sat at that table and I heard every word he said; or, yeah, he was the one with the gun who shot him in the car.
>
> *She told you the truth of what she knew.* She told you she didn't want to tell us because she was trying to protect him. You saw her testimony. You saw her demeanor. You know it was visibly hard for her to come in here and do this.
>
> Now, Ms. Van Culin went over the instructions, so I don't want to go over it in too much detail, but I want to highlight what is important for you to consider. Okay? * * *
>
> One witness if believed by you is sufficient to prove any fact. We talked about it in voir dire. You all said you were okay with that. She is our pirate. She is our witness. *She is believable.* She tells you what he did. Okay?

(Emphasis added.) (Tr. Vol. 3 at 578, 584, 587.)

39

In *Thompson*, the Supreme Court of Ohio determined the prosecutor did not vouch for the credibility of a witness where the comment was essentially an argument "that no evidence on the record undermined [the witness's] truthfulness." *Id*. at ¶ 200. Furthermore, as previously stated, even if the prosecutor expresses a personal opinion on the truthfulness of a witness, reversible error does not automatically result where the trial was nonetheless fair or where plain error is not demonstrated by the appellant. *Wilkerson*, 2002-Ohio-5416.

. . . .

Here, within a larger context, the prosecutor's statements "[s]he didn't lie. * * * She never lied" related to Ms. Hager's prior testimony attempting to explain her evolving story to police and her initial holding back of appellant's presence and involvement. (Tr. Vol. 3 at 578.) The prosecutor's statement "[s]he told you the truth of what she knew" refers back to Ms. Hager's testimony that she was in and out of the kitchen when the discussion to deal with Mr. Elmore took place. (Tr. Vol. 3 at 584.) Finally, the prosecutor's statement "[s]he is believable" specifically recalled the jury instruction on sufficiency of the evidence based on one witness, if believed. (Tr. Vol. 3 at 587.) Furthermore, the jury was instructed:

> You are the sole judges of the facts, the credibility of the witnesses and the weight of the evidence. * * * You will apply the tests of truthfulness which you apply in your daily lives.
>
> These tests include the appearance of each witness upon the stand; the witness' manner of testifying; the reasonableness of the testimony; the opportunity the witness had to see, hear and know the things concerning the testimony; the accuracy of the witness' memory; frankness or lack of it; intelligence, interest and bias, if any, together with all of the facts and circumstances surrounding the testimony. Applying these tests you will assign to the testimony of each witness such weight as you deem proper.
>
> * * *
>
> * * * It is your province to determine what testimony is worthy of belief and what testimony is not worthy of belief.

(Tr. Vol. 3 at 531–32.) The jury was also instructed to weight the testimony of an accomplice "with grave caution" and that "[i]t is for you, as jurors, in the light of all the facts presented to you from the witness stand, to evaluate such testimony and to determine its quality and worth or its lack of quality and worth." (Tr. Vol. 3 at 535.) "We presume that the jury followed the court's instructions." *Thompson*, 2014-Ohio-4751, at ¶ 192; *Shine-Johnson*, 2018-Ohio-3347, at ¶ 91–92. We further note that the defense at least in part argued its case based on the credibility of Ms. Hager, particularly her statements concerning her and appellant's alleged lack of awareness that

40

> Mr. Elmore would be shot. Considering all the above, we find appellant has not demonstrated plain error in regard to the prosecutor improperly vouching for a witness.
>
> Overall based on a review of the record and considering the complained of statements within the context of the entire trial, we cannot conclude that the prosecutor's statements, in isolation or cumulatively, when reviewed under the plain error standard, rose to the level of prosecutorial misconduct meriting a new trial.

*Young*, 2020 WL 704577, at \*9–11.

"It is patently improper for a prosecutor to comment on the credibility of a witness or to express a personal belief that a particular witness is lying." *Hodge v. Hurley*, 426 F.3d 368, 378 (6th Cir. 2005) (*citing United States v. Young*, 470 U.S. U.S. 1 (1985)). "[I]mproper suggestions, insinuations, and, especially, assertions of personal knowledge are apt to carry much weight against the accused when they should properly carry none." *Stermer v. Warren*, 959 F.3d 704, 725 (6th Cir. 2020) (*quoting Berger v. United States*, 295 U.S. 78, 88 (1935)). When a prosecutor vouches for a witness's credibility she risks creating the impression that she knows of additional evidence, not presented to the jury, supporting the defendant's guilt, and she places the imprimatur of the Government on the prosecutor's opinion, potentially inducing the jury to trust the Government's judgment over its own views. *Stermer v. Warren*, 959 F.3d 704, 725 (6th Cir. 2020) (*quoting United States v. Young*, 470 U.S. 1, 18–19 (1985)).

The first instance of alleged vouching occurred when the prosecutor, discussing Hager's multiple statements to the police, said: "It took her a while. And you heard about her statements and *you heard from her and the detective*. She didn't lie. She just was reluctant to give him up. She never lied. She just kind of

41

omitted his involvement." (ECF No. 7-4, at PageID 1122 (emphasis added).) This statement was explicitly referencing Hager's testimony that she had never lied to the police despite initially concealing Petitioner's involvement, (ECF No. 7-3, at PageID 866–68), and Detective Welsh's testimony distinguishing Hager's omission of facts from lying, (ECF No. 7-4 at PageID 1011). Lying, according to the detective, is saying something untrue in order to mislead, while an omission is merely not being forthcoming of all of the details. (*Id*.) In this context, the prosecutor can be understood to be paraphrasing Hager and Detective Welsh's trial testimony that Hager only omitted information, not asserting her personal opinion of Hager's credibility. Defense counsel was thus not unreasonable for withholding objection to a comment that fell "within the acceptable degree of latitude allowed for closing arguments." *See Thompson v. Warden*, No. 1:11-CV-312, 2012 WL 1413111, at *12–13 (S.D. Ohio Apr. 23, 2012), *report and recommendation adopted*, No. 1:11-CV-312, 2012 WL 2711285 (S.D. Ohio July 8, 2012).

The second and third instances of alleged vouching, on the other hand, present a closer question. In the second instance the prosecutor said, "*She told you the truth of what she knew*. She told you she didn't want to tell us because she was trying to protect him. You saw her testimony. You saw her demeanor. You know it was visibly hard for her to come in here and do this." (ECF No. 7-4, at PageID 1128 (emphasis added).) And finally, "One witness if believed by you is sufficient to prove any fact. We talked about it in *voir dire*. You all said you were okay with that. She is our pirate. She is our witness. *She is believable*. She tells you what he did." (ECF

No. 7-4, at PageID 1131 (emphasis added).) The Ohio Court of Appeals found that the second statement "refer[red] back to Ms. Hager's testimony that she was in and out of the kitchen when the discussion to deal with Mr. Elmore took place," while the third "specifically recalled the jury instruction on sufficiency of the evidence based on one witness, if believed." *Young*, 2020 WL 704577, at *11. But, accepting these state court findings as true, the fact that the prosecutor was referencing these particular portions of testimony and jury instructions does not change the context in such a way that the statements could be understood as anything other than an opinion of Hager's credibility. This the prosecutor may not do. *See Wilson v. Bell*, 368 F. App'x 627, 634 (6th Cir. 2010) ("A prosecutor is 'free to argue that the jury should arrive at a particular conclusion based upon the record evidence,' but 'may not express a personal opinion concerning the guilt of the defendant or the credibility of trial witnesses.'" (*quoting Caldwell v. Russell*, 181 F.3d 731, 737 (6th Cir. 1999), abrogated on other grounds by the AEDPA)).

Typically, defense counsel should be most prepared to guard against improper vouching when the prosecution's case depends on the testimony of a single state witness, as it does here, and the failure to object in such situations is more likely to be unreasonable. *See Walker v. Morrow*, 458 F. App'x 475, 491 (6th Cir. 2012) ("Bolstering and vouching are especially problematic in cases where the jury's verdict is likely to turn on witness credibility." (*citing United States v. Combs*, 379 F.3d 564, 576 (9th Cir. 2004))). But that is not necessarily true here because Petitioner's defense also relied, at least partially, on the credibility of Hager's

43

testimony that Petitioner was unaware that Granger and Brady were going to immediately shoot Elmore. *Young*, 2020 WL 704577, at *11.

Nevertheless, even assuming that the prosecutor's comments were improper and counsel should have objected, the statements did not materially affect the outcome. Prejudice is decided by examining the remarks within the context of the whole trial, assessing "the probable effect the prosecutor's [comments] would have on the jury's ability to judge the evidence fairly." *Stermer*, 959 F.3d at 726 (*quoting Young*, 470 U.S. at 12 (internal quotation marks omitted)). Factors to consider include "the weight of the evidence against the defendant, the tactical context of the prosecutor's statements, and whether the comments were invited by the defense's own conduct," *id.* (*citing Darden v. Wainwright*, 477 U.S. 168, 181–83 (1986)), as well as the nature and frequency of the comments, *id.* (*citing Berger*, 295 U.S. at 89). Because the AEDPA applies to the state court's determination that Petitioner has not shown prejudice, relief is appropriate only if that decision unreasonably applied federal law or was based on an unreasonable determination of the facts. § 2254(d).

The Ohio Court of Appeals reasoned that the prosecutor's comments were not so prejudicial as to warrant a new trial in the context of the whole trial. It pointed to the jury instructions advising jurors that they were the sole judge of credibility, that testimony from accomplices should be weighted with grave caution, and that it was their responsibility to decide what testimony was worthy of belief. *Young*, 2020 WL 704577, at *11. The court also noted that the prosecutor's statements referred

44

to specific portions of testimony presented at trial and that the defense argued its case based on Hager's credibility. *Id*.

Because the prosecutor tied her comments regarding Hager's credibility directly to the evidence, the statements did not imply any special knowledge of facts not before the jury. *See Wilson v. Bell*, 368 F. App'x 627, 634 (6th Cir. 2010). The prosecutor's remarks were also made in response to the defense closing argument, in which defense counsel challenged the truthfulness of Hager's story: "Please remember, it took the State's star witness, the person they identified as the pirate, to be forthcoming in her attempts to tell the truth that entire day four times, four different times. They had to go back to her over a six-month period. She had to get it right or maybe she had to get it straight." (ECF No. 7-4, at PageID 1117.) In these circumstances, the state court's conclusion that Petitioner was not prejudiced by the prosecutor's improper vouching was not unreasonable.

Because Petitioner has failed to show that counsel's failure to object to the jury instructions or alleged prosecutorial misconduct, either collectively or individually, was ineffective assistance of counsel, the Undersigned recommends that Petitioner's second ground for relief be **DENIED**.

## IV.     CONCLUSION

For the foregoing reasons, it is recommended that the Petition be **DENIED** and the action be **DISMISSED**. Because reasonable jurists would not disagree that Petitioner has failed to make a substantial showing of a violation of constitutional

rights, Petitioner should not be granted a certificate of appealability and should not be permitted to proceed on appeal *in forma pauperis*.

## Procedure on Objections

If any party objects to this Report and Recommendation, that party may, within fourteen days of the date of this Report, file and serve on all parties written objections to those specific proposed findings or recommendations to which objection is made, together with supporting authority for the objection(s). A judge of this Court shall make a *de novo* determination of those portions of the report or specified proposed findings or recommendations to which objection is made. Upon proper objections, a judge of this Court may accept, reject, or modify, in whole or in part, the findings or recommendations made herein, may receive further evidence, or may recommit this matter to the magistrate judge with instructions. 28 U.S.C. § 636(B)(1).

The parties are specifically advised that failure to object to the Report and Recommendation will result in a waiver of the right to have the district judge review the Report and Recommendation *de novo,* and also operates as a waiver of the right to appeal the decision of the District Court adopting the Report and Recommendation. *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).

The parties are further advised that, if they intend to file an appeal of any adverse decision, they may submit arguments in any objections filed, regarding whether a certificate of appealability should issue.

46

_s/ Elizabeth A. Preston Deavers_

**ELIZABETH A. PRESTON DEAVERS**

**UNITED STATES MAGISTRATE JUDGE**

**Date: March 7, 2022**